## RICH v. VICTORIA COPPER MINING CO.

(Circuit Court of Appeals, Sixth Circuit. July 10, 1906.)

No. 1,526.

**1.** DESCENT AND DISTRIBUTION—REAL PROPERTY—TITLE OF DISTRIBUTEES.

Where intestate died, leaving surviving him a widow and father, but no issue, the widow took a life estate in the decedent's lands, and the father took the remainder after the widow's death, under the express provisions of Comp. Laws Mich. 1857, pp. 858, 859.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Descent and Distribution, § 145.]

**2.** REMAINDERS—RECOVERY OF LAND—ADVERSE POSSESSION—LIMITATIONS—ACCRUAL OF RIGHT OF ACTION.

Comp. Laws Mich. 1897, § 9716, subd. 2, declares that, when a person claims as heir of one who died seised of land, his right of action to recover the land shall be deemed to have accrued at the time of such death, unless there is a tenancy by curtesy or other estate intervening, in which case his right shall be deemed to have accrued when such intermediate estate shall expire. *Held*, that where the father of the deceased owner of certain land was only entitled to the same in remainder after the termination of the widow's life estate, his right of action to recover the land did not accrue until the widow's death, and hence adverse possession prior to that time could not affect his title.

**3.** DEEDS—COVENANTS—SUBSEQUENT TITLE—PROBATE DECREE.

Where a widow conveyed all her right, title, and interest in certain land derived from her deceased husband, in which she had a life estate, by a deed containing no covenants of warranty, any rights which she subsequently acquired under probate decree vesting in her the land in controversy in fee did not accrue to her grantee.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 398, 330; vol. 19, Cent. Dig. Estoppel, § 109.]

**4.** COURTS—PROBATE COURTS—JURISDICTION—QUESTIONS OF TITLE.

A court of probate, as a part of the administration of an intestate's estate, while entitled to order the possession of certain land turned over to the widow, had no jurisdiction to adjudicate in respect to the extent of the widow's title or the validity of the titles and interests of other parties.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 479.]

**5.** ADMINISTRATORS—PETITION FOR DISTRIBUTION—NOTICE.

Under Comp. Laws Mich. 1897, § 9448, requiring notice of hearing on a petition for distribution, an order of a probate court, declaring that certain land of which an intestate died seised should be delivered to the widow, granted without proof of notice and the appointment of a time for hearing, was void.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 1281.]

**6.** DEEDS—ESTATE CONVEYED.

Where a widow conveyed all her rights, title, and interest in and to certain land which she derived from her deceased husband's estate, the deed was satisfied by a life estate, as well as an estate in fee.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 395–398.]

**7. ADVERSE POSSESSION—NOTICE.**

Occupation by defendants of land to which the plaintiff made no claim did not charge plaintiff with notice that defendants made any hostile claim to plaintiff's adjoining land, and did not put plaintiff on inquiry in respect to the nature of defendants' possession.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 129–131.]

**8. TRIAL—INSTRUCTIONS—BONA FIDES OF PLAINTIFF'S CLAIMS.**

In ejectment to recover certain land to which defendants claimed title by adverse possession, the court charged that at some time nearly all the timber had been cut off the southwest quarter and the northwest quarter of the section; that the property had been taken off whenever defendants needed it in the operation of their mine without asking the people (referring to plaintiff) who pretended to own eight-twentieths thereof anything about that, in fact, seeming to have ignored absolutely, from the beginning, that plaintiffs ever had any right there; that plaintiffs had not paid taxes, had not looked after the land, but had allowed it to rest dormant, etc. *Held*, that such instruction was an objectionable reference to the good faith of plaintiff's claim to the land.

**9. ADVERSE POSSESSION—TENANTS IN COMMON—INSTRUCTIONS.**

Where, in ejectment to recover certain land, plaintiff and defendant were tenants in common, and defendant claimed title by adverse possession, an instruction that it was not necessary that the occupation by defendant, in order to be adverse, should be such that a mere stranger passing by would see the possession and appreciate that some one was in possession claiming title to the whole section, but that it was only necessary that the posesssion was such that those in the neighborhood, and in a position to know what was going on, appreciated that defendants had possession, and claimed exclusive right to the whole property, was erroneous.

**10. SAME—TENANCY IN COMMON—BURDEN OF PROOF.**

Where defendant claimed by adverse possession the entire title to land which it had previously owned in common with plaintiff, who had been in rightful possession, the burden was on defendant to prove that its possession was accompanied by tortious and disloyal acts to plaintiff, which were open, continued, and notorious, so as to preclude all doubt as to the character of the holding or the want of plaintiff's knowledge that the same was adverse.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, § 656.]

**11. SAME—HOSTILE POSSESSION—EVIDENCE.**

Defendant previously owned certain wild, unfenced lands, in common with plaintiff. Defendant permitted the land to be pastured without plaintiff's consent, and employed a caretaker to look after the premises. No particular thing was done by him, however, and during subsequent years, the land was assessed as nonresident, which could lawfully be done only when there was no occupancy of the premises. Defendant paid taxes for some years and bid off the land or purchased from others at tax sales for other years. *Held*, that such acts were insufficient to establish defendant's claim of title as against his co-tenant by adverse possession.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, § 503.]

In Error to the Circuit Court of the United States for the Western District of Michigan.

D. H. Ball, for plaintiff in error.

C. D. Hanchett and A. F. Rees, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and COCH-RAN, District Judge.

SEVERENS, Circuit Judge. This is an action in ejectment. The plaintiff sought to recover the possession of an undivided eight-twentieths of two quarter sections of land in Ontonagon county in the northern peninsula of Michigan; that is to say, the N. W. ¼ and the S. E. ¼ of section 30 in township 50 N. of range 39 W. The defendant pleaded the general issue, and gave notice of a special defense under the statute of limitations of that state. The cause was tried before a jury and the result was a verdict and judgment for the defendant. The plaintiff made out a clear title to the eight-twentieths of the land in question, and established his right to recover unless he was barred by the statute of limitations. It appears from the record that one Samuel H. Broughton owned this undivided interest in the land at the time of his death which occurred about December 3, 1860. He died intestate. He had no issue but he left surviving, his widow, Sarah N. Broughton, and his father, Sh'ebuel H. Broughton. By the statutes of Michigan then in force (Comp. Laws 1857, pp. 858, 859), the widow took a life estate in the lands of the decedent and the father took the remainder after the death of the widow; the statute being as follows:

"2. If he shall leave no issue, his estate shall descend to his widow during her natural life time, and after her decease to his father."

The plaintiff has the title of the father derived by mesne conveyance from him. The widow became administratrix of the husband's estate, as is to be inferred from what follows, and at the close of her administration in March, 1867, the judge of probate of Ontonagon county, upon her petition, made an order reciting that it satisfactorily appeared that the deceased left no father, and assigning to her the eight-twentieths of the above-mentioned. quarter sections of section 30, and other described lands, "to have and to hold the same unto herself and to her heirs and assigns forever." A certified copy of this order was offered in evidence by the defendant at the trial and was admitted by the court over the objection of the plaintiff that there was nothing to show that the probate court had jurisdiction, by notice or otherwise, to make the order; and further, that it did not purport to be made upon notice, nor did it recite any notice. The facts stated in this objection sufficiently appear. The widow on or about October 10, 1866, conveyed "all her right, title and interest" in the eight-twentieths of these quarter sections to the Victoria Mining Company, but this deed, we infer, was never recorded. The company at that time acquired from other parties a partial interest in the other twelve-twentieths, and on September 19, 1869, acquired the remaining interest in said twelve-twentieths. Such title as the Victoria Mining Company had in the two quarter sections was acquired in 1890 by G. Winthrop Coffin on an execution sale upon a judgment obtained by him against that company. The Victoria Copper Mining Company, the defendant in this suit, in January, 1899, acquired through the

mesne conveyance the title of Coffin, and thereupon assumed full and visible possession thereof. From these recitals it is apparent that the whole stress of the controversy lies in the contention that the defendant has acquired the title to the eight-twentieths, which is the object of the suit, by adverse possession maintained through 15 consecutive years, that being the period prescribed by the Michigan statute of limitations. Act March 30, 1863, now section 9714, Comp. Laws 1897. The title of Shebuel H. Broughton, which the plaintiff has, entitled him to the possession in 1881, and no cause of action accrued to him until that time. Section 9716, Comp. Laws 1897. Adverse possession prior to that time by any one would not affect his title. But, in fact, there had been no adverse possession. The conveyance by Mrs. Broughton of all her "right, title and interest," which was her life estate, to the Victoria Mining Company gave the company it having already acquired the other twelve-twentieths, the right to exclusive possession while she lived.

It is claimed by the defendant that the order of the probate court gave to Mrs. Broughton and to her grantees color of title, which would extend the possession of some part of the land to the limits of the lands described in the order. It is to be noticed her grant was in 1866 and was a grant of her right, title, and interest, which was of life estate only; and further that the order of the probate court was made in 1867. It was the deed of Mrs. Broughton which supplied such color of title as there was. We do not perceive that the order of the probate court, if valid for any purpose, has any bearing upon the question of adverse possession. Moreover, though made upon an entirely false assumption, it was not an adjudication which conferrred any rights upon her former grantee, there being no covenant of warranty. It would have been a proper order to make in the distribution of the estate, for Mrs. Broughton was entitled to have the possession turned over to her. But it was beyond the power of the probate court to adjudicate in respect to the extent of her title and the validity of the titles and interests of other parties. That power belongs to courts of general jurisdiction. The probate court distributes and assigns the property of the intestate to those apparently entitled to the possession, but it does not by its orders originate or establish any muniment of title to the real estate in the distributees. As was said by Judge Cooley in Dickison v. Reynolds, 48 Mich. 158, 12 N. W. 24, when the estate has been fully administered "the assignment is a matter of course and a mere formality." And undoubtedly this is so unless there are adversary proceedings in the nature of a plenary suit for which the statute provides in some cases. The titles of Mrs. Broughton and of the decedent's father vested immediately upon the death of the decedent. There was nothing for the probate court to decide. The assignment was, in effect, nothing more than awarding Mrs. Broughton the possession. But it is unnecessary to pursue the discussion upon this aspect of the case. Section 9448 requires that notice of the hearing upon a petition for distribution shall be given. And if the order asked seriously involves the ultimate

rights of property, it would be contrary to fundamental principles that notice should not be required. In this instance there is no proof that any order appointing a time for hearing was made, and no proof that any notice of the application was given. We are of opinion that the order, especially in the absence of such showing, was a nullity.

In order to give color of title the deed or other medium of transfer must purport to convey the estate to which the possession by the grantee is conformable. Campau v. Campau, 44 Mich. 31, 5 N. W. 1062, where Marston, C. J., said:

"It is also well settled that the possession of an occupant is co-extensive with his claim and color of title. If in possession of a part under color of title to the whole tract, his constructive possession extends to the whole; if under color of title to an undivided interest, his constructive possession covers the whole to the extent of such interest; if without color of title, the possession is not extended by construction, beyond the boundaries of the occupied portion. The constructive possession of premises will be co-extensive in interest with the title which gave rise to and created it, and in like manner the actual possession may be limited by the title of the occupant. The actual possession of a tenant in common will not be presumed adverse to that of his co-tenants, and his constructive possession in like manner will be limited to his interest as tenant in common."

But there was nothing in Mrs. Broughton's deed which indicated the extent of the interest intended to be transferred. Its terms would have been satisfied by a life estate as well as by an estate in fee. We now proceed to consider the special questions raised by the plaintiff's exceptions.

Before taking up the assignments of error in detail, it is necessary to state more particularly the facts on which the questions arise. The quarter sections which are the object of the suit touched each other at a point. The northeast quarter and the southwest quarter had, for some time previous to the events with which the suit is concerned, been owned by the Victoria Mining Company. The locality was in a wild uncultivated region of forest and open spaces. The Ontonagon river runs around on other sections to the east and south. Counsel for defendant correctly described the premises as "wild, rough mining and mineral land. The nearest neighbors were the ferryman on the river, the Walsh homestead, no other neighbors nearer than Rockland, four miles away." The Walsh homestead was on the section next east, No. 29. The Victoria Mining Company had located a mining plant on the southwest quarter of the section, but it had never been operated to any extent and had fallen into disuse, and those who had occupied there had removed to other parts. Agents of the mining company occasionally visited the place to see that the property was not being injured, and there was evidence tending to show that they engaged Walsh to look after the premises, and as compensation authorized him to pasture his cattle thereon. There were open tracts on the land where there had been partial clearings. There was no enclosure of any part of the section or anything to prevent cattle turned on any part from going off into adjoining territory, or to prevent cattle coming in from outside and pasturing these clearings. There was also evidence that at one time a prospective

purchaser went there and pumped the water out of the mine, and in doing this cut some timber on the section, on what parts is not clear. The mining company paid the taxes on the whole section some of the years and purchased it at tax sales or from purchasers at tax sales for other years. During the seven years from and including 1892 and 1898 the lands were assessed as nonresident, which imports that they were unoccupied. Neither Shebuel H. Broughton nor his grantees have, at any time, exercised acts of ownership over the land except by grants of the eight-twentieths undivided interest heretofore stated. Inasmuch as the plaintiff's predecessors in title were the owners of the eight-twentieths undivided interest, and were therefore tenants in common with those whose title the defendant has acquired, the nature of the adverse possession, which the defendant is bound to make out in order to bar the convenant, is not the same as in the case where there is no such relation, a distinction which it is important to bear in mind. Newell v. Woodruff, 30 Conn. 492; Foulke v. Bond, 41 N. J. Law, 527.

The general proposition is not doubted that when a grantee takes actual possession of a part of a tract of land which the grant purports to convey to him under a claim of title to the whole derived from the grant, such partial possession will by construction extend to the limits of the grant. But the court below, in its instructions to the jury, told them that "the evidence indicates that it (that is, the mining company) had a mine on a portion of this section, but not on these quarters, but if it had a mine on any portion of this section and claimed the whole section, then its possession of that mining site, with the claim that was asserted to the whole of that section, would extend to the whole section." This was erroneous. If a man finds another in the occupation of some part of his land, he is bound to inquire under what claim of right the other assumes to dispossess him, and the answer to this inquiry necessarily informs him that the other party claims title to the whole tract covered by the hostile grant. But the occupation by another of land to which the first makes no claim does not charge the latter with notice that the other makes any hostile claim or put him upon inquiry in respect to the nature of the other's claim. There is no possession adverse to him. Coal Creek Mining Co. v. Heck, 15 Lea (Tenn.) 497. If the mining company was in the occupation of the mine on the southwest quarter of the section, it was so under an independent grant from other parties, which, being looked up, would give no hint that a party occupying within its limits was also claiming the adjoining land. No doubt cases may arise where land along the margin of the granted land has been occupied under a claim that it was covered by the grant, but which is shown not to be so. Such cases present a difficulty which must be solved upon the special facts. But here no such question arises. There is only a proximity of parcels which were the subjects of independent grants.

The court in dealing with the question of adverse possession said to the jury:

147 F.—25

"Now, at some time, it is not shown just when, nearly all of the timber has been cut off; all the timber has been cut off the southeast quarter and the northwest quarter, and they have gone in there and taken this property off whenever they needed it in their operation at the mine; they have not seemed to have asked the people who pretend to own the eight-twentieths anything about that, and, in fact, they seem to have been ignored absolutely from the beginning; and they, so far as this testimony is concerned, seem to have ignored the fact that they ever had any right up there; they haven't paid the taxes; they haven't looked after it; they have just allowed it to rest dormant."

It should be observed in passing that this language was unfortunate. It is more than possible that the jury might have understood the court's estimation of the plaintiff's claim as the pretense of a claim. To so stigmatize a case by the court in a charge to the jury is liable to have an influence upon their judgment greater perhaps than the court always realizes. And it seems to us that the tenor of the language used in this summing up of facts was not quite justifiable in view of the facts presented by the evidence. We do not, however, decide that there was reversible error in these remarks to the jury. The court did not therein lay down any rule of law, but was summing up the facts, and elsewhere stated to the jury that they should find the facts, "irrespective of anything the judge may have said during the trial, or anything he may have said to you in the charge."

The court in instructing the jury upon the requisites of the adverse possession which the defendant must prove said:

"Now, it is not necessary that the occupation should be such that a mere stranger passing by would see the possession and would appreciate that somebody was in possession there claiming the title to the whole section; it is only necessary that the possession was such that those in the neighborhood, and who were in a position to know what was going on, appreciated that the defendants had possession and claimed the exclusive right to the whole of the property."

Admitting that this instruction might have been proper if the parties had been strangers, it was not so upon the relation of tenants in common which the court conceded to have existed. It was necessary that the other tenant in common should have had notice that his cotenant was asserting a hostile claim of title to the whole estate. It was not sufficient that the other tenant should be in the actual possession and doing those things which might seem to others proper to one owning the entire interest. Such possession would be the right of a tenant in common as regards strangers, and would have all the appearances to them of an occupation by one having the entire ownership. Campau v. Campau, 44 Mich. 31, 5 N. W. 1062; Marble v. Price, 54 Mich. 466, 20 N. W. 531; Fenton v. Miller, 94 Mich. 204, 53 N. W. 957. And in Gower v. Quinlan, 40 Mich. 575 it was held that a tenant in common could not maintain ejectment against his co-tenant who was in the actual possession of the whole and exercising acts of ownership if he has done nothing inconsistent with the rights of his co-tenant. And in McClung v. Ross, 5 Wheat. 116, 124, 5 L. Ed. 46, Chief Justice Marshall said:

"A silent possession accompanied by no act which can amount to an ouster or give notice to his co-tenant that his possession is adverse, ought not, we think, to be construed into an adverse possession."

In the present case the Victoria Mining Company from 1866 to 1881 owned twelve-twentieths of the estate in fee and the other eight-twentieths for the life of Mrs. Broughton, and the possession whether actual or constructive was lawful and conformable to its title. In 1881, the right of Shebuel H. Broughton to the possession of the eight-twentieths accrued. Having been before in the rightful possession of the whole, the continuance of that possession would not be adverse to the co-tenant, unless it was accompanied by tortious and disloyal acts of the tenant, which must be open, continued, and notorious so as to preclude all doubt as to the character of the holding, or the want of knowledge on the part of the co-tenant. Zeller's Lessee v. Eckert, 4 How. 289, 11 L. Ed. 979. And the burden of proof of these conditions was on the defendant.

Several assignments of error involve the general question whether the court should have directed a verdict for the plaintiff upon the ground that there was no sufficient evidence of such an adverse possession as would bar the action of a tenant in common. If we eliminate the supposed effect of the possession of the mine site on the southwest quarter to extend constructively to the whole section, which seems to have been relied upon by the court below, there is not much left to support the requisite adverse possession. There was one occasion, perhaps more, when timber was cut on the land in question. But there was no continuity, and it is well known that in a new country such acts are common trespasses. There is evidence that the Victoria Mining Company authorized Walsh to let his cattle run over the whole section. But there was no enclosure, and the running of cattle at large is no uncommon thing in such a country, and would scarcely suggest that it was done by the special authorization or license of the owners of the land. Under the laws of Michigan, the merely passing over and cropping these wild, unfenced lands without the consent of the owners was not a trespass, and would convey no hint that the owner of the cattle was claiming the land on which they pastured, or setting up title in any one else. It is said that the Victoria Mining Company and its successors employed Walsh to look after the premises. But no particular thing done by him on these quarter sections is shown. If this be not literally true, it is substantially so. During some of the time the company paid the taxes. During other years, from 1892 to 1898, they were assessed as nonresident by the supervisor of the township which can lawfully be done only when there is no occupancy of the premises. The company bid off the land for taxes. But the allowing of the taxes to go unpaid and then bidding them in are not acts of ownership, but more often indicative of a purpose to acquire a new title.

But it remains to be said that the doing of all these things by a tenant in common is not inconsistent with his character as such, unless accompanied by some open denial of the right of the co-tenant or such

conduct as clearly and unequivocally shows that the joint tenancy is repudiated by him. Acts done which are consistent with his possession for both himself and his co-tenant will not be held to be done in denial of the joint tenancy. We think it would be an unwarrantable deprivation of the property of a tenant in common to permit it to be divested by such vague, indefinite, and inconsequential acts of his cotenant as were shown by the proof in this case, and that the court erred in not instructing the jury to find for the plaintiff.

The judgment will be reversed, and a new trial awarded.