### Ratterman, et al. v. Apperson, Exor, et al.

(Decided February 1, 1911.)

#### Appeal from Kenton Circuit Court
#### (Common Law and Equity Division).

1. Where a party to the suit dies his death is suggested of record, and the action is revived against his devisee, a judgment subsequently entered is void as against his heir at law, who was not a party to the action.

2. Limitation does not run against the remainderman during the life of the life tenant, although the person in possession holds adversely believing himself the absolute owner of the property.

3. The remainderman is not barred by laches where he simply remains quiet under circumstances not requiring him to speak.

4. A joint owner of land who improves it believing it all to belong to him, will, where the property is indivisible, and a sale must be made for division, be adjudged out of the price the amount which his improvements added to the price of the property.

S. D. ROUSE and ROBT. C. SIMMONS for appellants.

FRANK M. TRACY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

In the year, 1888, Loretta Gibson owned one-third of a tract of land containing 68 acres in Kenton county, and James Wren owned two-thirds. Sadie Hillenmeyer held a purchase money lien for $1,200 on Wren's two-thirds. On March 27, 1888, Loretta Gibson brought a suit against Wren for the partition of the tract, alleging that it could be divided without materially impairing its value. Wren filed an answer in which he denied that the land could be divided and asked that it be sold and the proceeds divided. The case being submitted the circuit court made a division by which Wren was required to pay Loretta Gibson a certain sum of money to equalize them as the portion of land set apart to him was of value greater than two-thirds of the entire tract. He appealed to this court where the judgment was reversed, the mandate of the court being in these words:

"For this reason the judgment is reversed, and remanded, with directions to partition the land, if it can be done without materially lessening the value of the interest of the joint tenants, or either of them; and if this cannot be done, the entire tract should be sold. As the record now stands, we see no reason why the division can not be made." (Wren v. Gibson, 90 Ky., 192.)

After the return of the case to the Kenton circuit court and before any further steps were taken, Wren died leaving a will which was duly admitted to probate, devising his property to his wife, Virginia Wren, for life, but making no disposition of the remainder. The wife was made executrix without bond and qualified. She thereupon on November 12, 1890, filed her petition in the action, suggesting the death of James Wren, and

asking that the case be revived against her as executrix and sole devisee under the will of James Wren. This was done. The case was then submitted, and the court entered a judgment ordering a sale of the property, and a distribution of the proceeds in proportion to the respective interests of the parties, as James Wren had asked in the pleading filed in his life time. The sale was made and confirmed; the purchase money was paid into court. One-third of it was paid to Mrs. Gibson, and two-thirds, less the debt to Mrs. Hillenmeyer, was paid to Mrs. Wren, the amount she received being $4,000, which she has held since as sole devisee under the will of James Wren; and has preserved the principal ever since using only the income. The purchaser at the decretal sale resold the property by warranty deed to August Ratterman, etc., on March 11, 1897, who erected valuable improvements upon the land, and have since held and used it. James Wren had no children at the time of his death; his father, Thomas Wren, was his sole heir at law but was not made a party to the partition suit. He died on August 6, 1904, and on December 12, 1907, this suit was brought by his devisees against Ratterman, etc., to quiet their title to two-thirds of the land subject to the life estate of Virginia Wren. The defendants filed an answer in which they pleaded the foregoing facts charging that they and those under whom they claimed had been in adverse possession of the land for more than fifteen years under their purchase; that Thomas Wren had set up no claim to the land in his life time; that they had made valuable improvements upon the property, believing themselves to be the owners in fee which greatly enhanced its value; that it was purchased at the decretal sale upon the idea that the whole title was sold. They asked that Virginia Wren be made a party to the action, and that she be required to bring in the $4,000 that she had and that they have credit for the purchase money debt of Sadie Hillenmeyer, and for the reasonable enhancement in value of the property by the improvements. The circuit court sustained a demurrer to the answer and entered a judgment in favor of the plaintiffs for the relief prayed. The defendant appeals.

The will of James Wren, so far as it is material here is as follows:

"Second, I will and devise to my beloved wife, Virginia Wren, the use, benefit and control of all of my es-

tate, both real and personal for and during her natural life"

"Fourth, I hereby constitute and appoint my said wife, Virginia Wren, the sole executrix of this my last will and testament, and request the county court to permit her to qualify as such without being required to give any security on her bond as executrix aforesaid."

It will be observed that a life estate is all that Mrs. Wren took under the will as devisee. She was not authorized as executrix to sell or convey the land. The testator making no disposition of the land beyond the life estate devised his wife, it passed at his death to his heir at law. It was not assets in the hands of the executrix. (United States Fidelity Co. v. Russell, 141 Ky., 601.)

There are many authorities to the effect that if a suit is brought and one of the parties dies pending the action, and this does not appear of record, a judgment entered after his death, is not void. (Black on Judgments, section 200; Freeman on Judgments, section 153, and cases cited.) But this principle can have no application where the death of the party is suggested of record, and the action is revived against certain parties; for the reason that after this is done, the action proceeds as if originally brought against the parties against whom it is revived. It is no longer an action against the deceased person. His death having been suggested he is out of the case as fully as if he had never been named in it. The purpose of the revivor is to show who are the parties litigant, and the court is without jurisdiction to enter a judgment affecting parties not before it. (Stockton v. Copeland, 30 W. Va., 681; Bauer v. Ward, 135 Ala., 432; State v. Riley, 219 Mo., 687; 23 Cyc., 678; Freeman on Void Judicial Sales, section 8.) It will be observed from the mandate of this court that a judgment was not directed to be entered on the return of the case to the circuit court. The circuit court was left to determine whether the land should be divided or sold, and before any decision was made Wren died. When he died and the action was revived, it was an action in court between the parties before the court as shown by the revivor. Thomas Wren, the heir at law, not being before the court, the subsequent proceedings were void as to him

It is true that the purchaser of the property and those claiming under him, had held it for more than

fifteen years when this suit was brought claiming it as their own, and supposing that they had a perfect title to it. But as the life tenant was still living they can not defend against the remainderman on the ground of limitation. Section 2505, Kentucky Statutes, provides:

"An action for the recovery of real property can only be brought within fifteen years after the right to institute it first accrued to the plaintiff, or to the person through whom he claims."

The remaindermen are the plaintiffs here. Their cause of action to recover the property did not accrue to them during the life of the life tenant, and although the person in possession may in fact claim adversely, and hold the property believing it is his own for fifteen years, the statute does not begin to run against the remaindermen until the death of the life tenant. (Keller v. Stanley, 86 Ky., 245; Jeffries v. Butler, 108 Ky., 531; Penn v. Rhodes, 124 Ky., 798, and cases cited.) The life tenant is still living. This is a suit not to recover the property, but to quiet the plaintiff's title to it in remainder. It is insisted that the suit might have been brought fifteen years ago, and is, therefore, barred by limitation. In answer to this in Keller v. Stanley, 86 Ky., 245, the court said:

"It has been held that limitation does not during the existence of the particular estate, run in favor of the tenant for life against the owner of the estate in remainder; and that being so, it would seem that an action to quiet his title might be maintained by the latter at any time before the termination of the life estate. For it is difficult to understand how the right to quiet title, or establish a claim to land, may be barred by limitation, while the right to recover the same land may exist for an indefinite period afterwards."

We find nothing in the record to support the defense of laches. The land lay in Kenton county. Thomas Wren lived in Montgomery county, perhaps over a hundred miles from the land. By no word or deed of his did he mislead the defendants. He simply remained quiet during the existence of the life estate. The remainderman does not lose his right by laches, simply from remaining quiet before his cause of action accrues. It is not shown that he was ever present or that any circumstances were brought home to him requiring him to speak.

It has been held by this court that a life tenant or a purchaser from the life tenant can not assert a lien on

the land against the remainderman for his improvements although made in good faith under the belief that he was the absolute owner. (Henry v. Brown, 99 Ky., 13; Holmes v. Land, 136 Ky., 21, and cases cited.) The reason for the rule is that if a lien was adjudged for improvements in such cases the remainderman would take his inheritance with a burden, and that he can not be burdened thus without his consent. For to do this would in many cases cause him to lose the property. But this case rests upon different principles. The land is indivisible. Defendants own by virtue of their purchase Mrs. Gibson's one-third of it. They hold under a warranty deed from the purchaser at the judicial sale who bought the whole property in a suit for partition, and for the payment of the purchase money. It is simply a case where, in a judicial proceeding, some of the parties interested in the property were not made parties defendant to the action. The purchaser did not buy the life estate in any part of the lot. He bought the lot and although it now appears that he did not acquire a perfect title to two-thirds of the lot, he did acquire a perfect title as to one-third of it. So it is the case of a man who owning one-third of a lot and believing that he owns all of it, in good faith makes valuable improvements upon the property as his own. The lot must be sold for division. Defendants are entitled to a sale, and when this sale is made, complete justice will be done between the parties when the court ascertains how much of the price which the property brings represents its enhancement by reason of the defendants' improvements. When this is deducted from the entire price of the lot, two-thirds of the remainder less cost will represent the value of James Wren's interest in the property. As the lot must be sold for division there is no reason why the plaintiffs should be enriched to the extent of the enhancement of the property by reason of the defendants' improvements. Where one joint owner believing himself the owner of the whole property, has improved it, the court will, in dividing it, cut off to him his improvements, if this can be done without injustice to his cotenant. There is no reason why the same principle should not be applied where the property is indivisible, and is sold for division of the proceeds, by ascertaining what part of the price represents the enhancement of the value of the property by reason of the improvements. This takes nothing from the co-tenant that is his and

he can not complain. As the property must be sold in any event, and the proceeds divided there is no reason why the chancellor should adjudge to the plaintiffs anything more than their own.

On the return of the case to the circuit court Virginia Wren will be brought before the court. If on final hearing the facts are as above stated a sale of the lot may be ordered and when the lot is sold, the court will ascertain how much the price which the lot brings represents the enhancement of the property by reason of the defendants' improvements. This will be adjudged to the defendants; also one-third of the remainder. From the two-thirds representing the interest of James Wren will be deducted the Hillenmeyer purchase money debt with interest up to the time that it was paid. The balance is the fund to which the plaintiffs will be entitled at the death of the life tenant; and this, the court should have securely invested for them so that it will not be lost. They will be entitled to the principal without interest at her death, and the defendants will be entitled to the interest on it during her life. Virginia Wren will be entitled to the interest on the $4,000 she holds as long as she lives; at her death this $4,000 will belong to the defendants and the court will, if they desire it, make proper orders for the preservation of the fund for them, while in the hands of the life tenant.

Judgment reversed and cause remanded, with directions to the circuit court to overrule the demurrer to the amended answer and cross petition and for further proceedings consistent herewith.