# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

MAGGIE ADELIA CASSEM, Appellant, *vs.* KATE TERRY
PRINDLE *et al.* Appellees.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. WILLS—*remote grantee of heir has a right to file bill to contest will.* A remote grantee of an heir-at-law under a conveyance made by the heir before the probate of a will which, if valid, will destroy the grantee's title, has such an interest in the will as entitles her to file a bill in chancery to contest its validity.

2. SAME—*when devisees under a lost will are entitled to partition.* Where a will giving a life estate in land to the testator's wife, with remainder to his grandchildren, has disappeared and has not been probated, one who obtains title to the land from the testator's son and the widow, with full knowledge of the will and the grandchildren's rights thereunder, is not a *bona fide* purchaser, and when the will is subsequently probated as a lost will the grandchildren are entitled to partition as against the wife of such grantee, to whom he devised the property at his death.

3. SAME—*when devisees are entitled to recover value of land, with interest.* Where part of the land obtained by the grantee of an heir and the widow, with knowledge that the fact of the existence of a will leaving the remainder in fee in the land to the testator's grandchildren was being concealed, is sold by him to an innocent purchaser for value the latter will be protected, but upon the probate of the will as a lost will the grandchildren are entitled

to recover from the estate of the fraudulent grantee the value of such land at the time of the death of the life tenant, with interest.

4. SAME—*meaning of the words "any person interested," used in section 7 of Wills act.* Section 7 of the Wills act, giving the right to file a bill in chancery to contest a will to "any person interested," means any person who has a direct, existing, pecuniary interest which will be detrimentally affected by probate of the will.

5. SAME—*when objection to a deposition because of no opportunity of cross-examination cannot be upheld.* Where the stipulation upon which an order consolidating a partition suit and a suit to contest a will is based provides that the case shall be tried without a jury, and the contestant is represented by the same counsel in both suits, in each of which the validity of the will is put in issue by the pleadings, the contestant cannot insist, on appeal, that a deposition of a subscribing witness, taken before the stipulation was entered into and admitted without objection to its being considered in the will case, was not admissible for the reason that it was taken before the will case was begun and without opportunity for cross-examination by the contestant.

6. SAME—*what makes a prima facie case that the will was lost.* Clear proof of the execution, attestation and contents of a will, and that the will was last seen in the possession of the widow some weeks after the testator's death, justifies the presumption that the widow performed her duty under the law and delivered the will to the probate court, and such proof, coupled with the testimony of the clerk of the probate court that he has made diligent search among the files and records of his office and has been unable to find the will, makes a *prima facie* case that the will has been lost.

7. SAME—*witnesses testifying to the contents of lost will need not give its exact language.* To establish the contents of a lost will it is not essential that the subscribing witnesses, by whom it is sought to make the proof, shall be able to repeat its exact language, and it is sufficient if they are able to recollect with certainty the substance of the will, which is a very simple one.

8. SAME—*when alleged error in admitting order of the probate court in evidence will not reverse.* In a consolidated cause, consisting of a bill for partition and a bill to contest a will, alleged error in admitting in evidence the order of the probate court admitting the will to probate will not reverse, where the cause was tried by the chancellor without a jury and there is sufficient competent evidence of the validity and contents of the will to sustain the decree.

9. LACHES—*when failure of the remainder-men to assert rights does not constitute laches nor raise estoppel.* Remainder-men are not obliged to assert their rights against the grantee of the life

tenant before the death of the life tenant notwithstanding the gran-tee's deed purports to be a conveyance of the entire title, and the facts that during the life tenant's lifetime they do not assert any rights against the grantee nor seek to prevent him from making valuable improvements do not constitute *laches* nor raise an es-toppel, where he had knowledge of the existence of their rights when the deed was made.

10. SAME—*grantee of a life tenant does not hold adversely to remainder-men until the life tenant's death.* The grantee of a life tenant, even though he supposes he has the fee as the deed pur-ports to convey, and retains possession, pays the taxes and makes improvements, does not hold his possession adversely to the remain-der-men until the death of the life tenant puts the Statute of Limi-tations in operation.    ○

APPEAL from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding.

BOTSFORD & MCCARTHY, (RUSSELL & MCNERNEY, of counsel,) for appellant.

C. F. IRWIN, R. S. EGAN, JOHN M. RAYMOND, and JOHN K. NEWHALL, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

On the 12th day of October, 1910, Kate Terry Prindle, one of the appellees herein, filed her bill in the circuit court of Kane county for the partition of certain real estate therein described between her sister, Laura Terry Hunt, (also one of the appellees herein,) and herself, title to said premises being claimed by virtue of the last will and tes-tament of Richard Terry, the grandfather of the appellees, executed March 17, 1888, and admitted to probate in the probate court of Kane county on September 26, 1910, as a will which had been lost or destroyed after the death of the testator. Thereafter, on July 28, 1911, Maggie A. Cas-sem, the appellant herein and one of the defendants to the partition suit, filed her bill in the circuit court of Kane county to contest the said last will and testament of Rich-

ard Terry, deceased, which had been so admitted to probate on September 26, 1910. By stipulation a jury was waived in the will case and the causes were consolidated in the circuit court and were heard together.

On the hearing it was shown that Richard Terry, the grandfather of appellees, died April 1, 1888, leaving surviving him his wife, Ann Eliza Terry, and his son, Arthur Terry, as his only heirs-at-law. The appellees were daughters of the said Arthur Terry and at that time were thirteen and fifteen years of age. On or about March 17, 1888, Richard Terry employed C. I. McNett, an attorney residing in the city of Aurora, to draw his last will and testament, and the same was executed by him on that date in the presence of McNett and Dr. W. T. Patterson, then of Aurora, who subscribed the same as witnesses. The will was left in the custody of Richard Terry, who on that occasion requested Dr. Patterson to see that the same was filed for probate after his death. About three weeks after the death of Richard Terry, Dr. Patterson called upon Ann Eliza Terry, the widow, and requested her to deliver to him the will in order that he might file the same for probate, as he had promised the testator. The will was produced at that time but was not delivered to Dr. Patterson, as Mrs. Terry expressed a desire to consult with her son, Arthur, before delivering the same to him. This is the last time Dr. Patterson ever saw the will, and the last time, so far as is shown by the proof, that the instrument was seen by anyone. This particular instrument was never filed for probate. Richard Terry died seized of lot 10 and the east 112 feet of lot 7, in block 16, of the original town of Aurora, Kane county, Illinois. On April 20, 1888, Arthur Terry and his wife by quit-claim deeds conveyed the said real estate to the said Ann Eliza Terry, and on July 26, 1889, she, in turn, conveyed by warranty deed said lot 10, in block 16, to one Randall Cassem, an attorney who resided in the city of Aurora, the expressed consideration

being $100. On February 4, 1890, Ann Eliza Terry also conveyed by warranty deed to said Randall Cassem the remainder of the real estate of which her husband died seized, being the east 112 feet of lot 7, in said block 16, subject to an encumbrance of $900, the expressed consideration being $3500. On October 22, 1897, Randall Cassem and said Maggie A. Cassem, his wife, conveyed by warranty deed to one L. V. Pike said lot 10, in block 16, and said Pike immediately thereafter went into actual possession of said premises, and from that time has been in the continuous and exclusive possession of the same and has occupied the same as his homestead. On November 14, 1909, Randall Cassem died testate, leaving appellant, Maggie A. Cassem, his widow and sole devisee under a last will and testament, in which said Maggie A. Cassem was also appointed executrix. Ever since February 4, 1890, the said east 112 feet of lot 7, in block 16, have been in the possession of the said Randall Cassem and his devisee, Maggie A. Cassem, and have been occupied by them during all of that time as a homestead. Arthur Terry died May 1, 1905, and the said Ann Eliza Terry died December 12, 1908. As has been stated, the last will and testament of said Richard Terry was established and admitted to probate in the probate court of Kane county on September 26, 1910, upon the petition of appellees, who represented that the same had been lost or destroyed since the death of said Richard Terry. By said last will and testament so established and admitted to probate, said Richard Terry devised and bequeathed to his wife, Ann Eliza Terry, for and during her natural life, all of his property, both real and personal, of which he should die seized, and at her death he devised and bequeathed the same to his grandchildren, Kate Terry (now Kate Terry Prindle) and Laura Terry, (now Laura Terry Hunt,) the appellees herein. G. A. Dulmage, a resident of the city of Chicago, was appointed executor. Dul-

mage having died prior to the probate of the will, letters testamentary have been issued to another.

The court found the issues for the complainant in the partition suit and decreed partition of the said east 112 feet of lot 7, in block 16, between the appellees. The decree further found that L. V. Pike was a *bona fide* innocent purchaser for value of said lot 10, in block 16, and that the value of said lot 10 at the time of the death of Ann Eliza Terry was $10,000, and decreed that said Maggie A. Cassem, as executrix of the last will and testament of Randall Cassem, should pay to appellees the sum of $11,700 in due course of administration, being the value of said lot 10 at the time of the death of Ann Eliza Terry, together with interest thereon. In the will case the court found and decreed that the instrument established as the will of Richard Terry and admitted to probate in the probate court of Kane county on September 26, 1910, was the last will and testament of the said Richard Terry, deceased. Separate appeals were prayed and allowed from these decrees to this court, and the causes have again been consolidated here.

It is contended on the part of appellees that appellant, Maggie A. Cassem, as a remote grantee of an heir-at-law of Richard Terry, was not a "person interested," within the meaning of the statute providing for the contest of wills, and was, therefore, not authorized to maintain her bill to set aside the last will and testament of Richard Terry. Section 7 of the act in regard to wills provides that when any will shall be admitted to probate, any person interested may, within one year after such probate, contest the validity of the same by a bill in chancery. The words "any person interested," mean any person who has a direct, existing, pecuniary interest which will be detrimentally affected by the probate of the will. (*McDonald* v. *White,* 130 Ill. 493; *Selden* v. *Illinois Trust and Savings Bank,* 239 id. 67; see, also, *Adams* v. *First M. E. Church,* 251

id. 268.) Appellant, Maggie A. Cassem, had such an interest and had the right to file this bill. Her interest existed at the time the will of Richard Terry was admitted to probate, and it was a pecuniary interest which was vitally affected by the probate of the will. While she was not an heir-at-law or a devisee of Richard Terry, she was a remote grantee of an heir-at-law by virtue of conveyances made before the will was admitted to probate, and was such an interested person as was entitled to maintain this suit.

Dr. W. T. Patterson had removed to the State of Louisiana prior to the time this litigation arose and his deposition was taken in the partition suit. The bill for partition, among other things, set up the execution, loss and probate of the last will and testament of Richard Terry. Dr. Patterson testified fully as to the circumstances surrounding the execution of the will, its attestation and the contents of the same. His deposition was read and considered upon the hearing of the consolidated causes, and appellant, Maggie A. Cassem, now contends that the same was not competent to be considered in the will case. The stipulation upon which the order consolidating the causes was based, and which was filed in the will case, provided that that case should be tried by the court without a jury and should be consolidated with the partition suit and the issues tried together by the court upon reasonable notice to both sides. The basis for the objection is, that this deposition was taken before the bill was filed in the will case and that no opportunity was had to cross-examine Dr. Patterson in the light of the issues presented in that case. The validity of the will of Richard Terry, as probated, was drawn in question by the pleadings in both suits. While it is true that the deposition of Dr. Patterson was taken before the filing of the bill in the will case, it is also true that it was taken before the above stipulation was entered into. The same attorneys represented appellant, Maggie A. Cassem,

258 – 2

in the will case who represented her individually and as executrix in the partition .suit. When the deposition of Dr. Patterson was read upon the hearing of the consolidated causes, no objection was made to this testimony being considered in the will case. Under these circumstances, and in view of the fact that one of the evident purposes of consolidating the causes was to avoid the expense of duplicating the testimony, it cannot now be urged that there was any error in considering this testimony in so far as it was applicable to the issues in each of the consolidated causes.

It is urged that Randall Cassem was a *bona fide* purchaser without notice of the existence of the last will and testament of Richard Terry, and that for this reason the decree in the partition suit is erroneous. Prior to the death of Richard Terry, and for some time thereafter, Dr. Patterson was a practicing physician residing in the city of Aurora. He was the family physician of Richard Terry and was on intimate terms with him. He was also acquainted with Randall Cassem, a practicing attorney of the city of Aurora, whom he had employed on various occasions. Prior to the death of Richard Terry, Randall Cassem suggested to Dr. Patterson that Richard Terry should make his will. Dr. Patterson informed him that he had done so, and Cassem asked him what disposition he had made of his property. Dr. Patterson informed him that the will was a very short one; that he had left his wife a life estate in all of his property and had devised the remainder to his two grandchildren. After the death of Richard Terry and prior to the date of the first conveyance to Randall Cassem by Ann Eliza Terry, Randall Cassem requested Dr. Patterson to secure the will of Richard Terry and deliver it to him. Dr. Patterson informed him that he had no right to make any such disposition of Terry's will, and Randall Cassem thereupon offered Dr. Patterson a consideration if he would secure this will and turn the same

over to him. This Dr. Patterson refused to do and im-
mediately communicated this circumstance to Ann Eliza
Terry and insisted that the will be probated. The con-
veyances by Ann Eliza Terry to Randall Cassem followed.
Thereafter, in October, 1892, Randall Cassem filed his pe-
tition in the county court of Kane county, setting up the
death of Richard Terry, representing that he died seized of
certain real estate, describing the real estate above men-
tioned, setting out the heirs, and representing himself to
be a purchaser of the said real estate from the widow and
heir, and that he believed the estate should be immediately
administered upon for the proper perfection of the title to
said real estate, and asked that he be appointed administra-
tor. A photographic copy of this petition appears in the
record and discloses that the same was prepared upon one
of the printed blank forms ordinarily used in the probate
courts of this State. In this petition, after alleging the
date of the death of the deceased, the printed words, "leav-
ing no last will and testament as far as your petitioner..
know.. or believe..," were stricken out. The proof of death
is made by the oath of Arthur Terry, the body of which
appears in the handwriting of Randall Cassem, and it also
omits to state that Richard Terry died leaving no last will
and testament. Letters of administration were issued to
Randall Cassem. The only testimony offered by appellant
in her behalf in the consolidated causes was a letter dated
May 12, 1888, and written by G. A. Dulmage, the executor
named in the last will and testament of Richard Terry, to
C. I. McNett, the scrivener of and one of the witnesses to
said will. The letter discussed the necessity of probating
Richard Terry's will, of the existence of which Dulmage
was aware. That portion of the letter particularly relied
on is the following: "Mrs. Terry thought that as all was
willed to her for her use and disposal, and there was no
debts but the doctor's bill and burial lot, perhaps she could
get along without the expense of the probate court." This

letter was identified by McNett during his cross-examination, and appellees made no objection to its admission. It is not shown that Randall Cassem ever saw this letter or knew its contents or that he ever talked with Dulmage or McNett. But even if Dulmage had received the information from someone that Richard Terry had devised his property to his wife for her use and disposal, that could not overcome the positive testimony of Dr. Patterson and McNett as to the contents of the will or affect the testimony of Dr. Patterson that he told Randall Cassem what the contents of the will were and that the remainder of the property had been devised to the grandchildren. Randall Cassem was not a *bona fide* innocent purchaser without notice. He had notice of the rights of appellees and of their interest in this property. His conveyance of a part of the real estate to Pike and the devise to his wife of the remainder were in fraud of the rights of appellees, and they were entitled to recover as against Randall Cassem and his representatives.

It is insisted that the loss or destruction of this will was not sufficiently proven to permit appellees to prove the contents thereof. It was conclusively shown that prior to his death Richard Terry had executed a last will and testament and that that instrument was in existence and in the possession of Ann Eliza Terry after his death. One of two things then must be true at the present time: either this instrument has been lost or destroyed, or it is still in existence. It is argued there is no proof that sufficient search has been made for the instrument. Section 12 of the Wills act provides that any person who may have in his or her possession any last will and testament of another for safe keeping or otherwise, shall immediately upon the death of the testator deliver up said will to the county court of the proper county, and a penalty is provided for failure to do so. Appellees traced the will into the possession of Ann Eliza Terry. It will not be presumed that she destroyed

the same, but the natural presumption to be indulged, and especially in view of the insistence of Dr. Patterson that the will should be probated, is, that she delivered the same to the probate court as the statute provides. The clerk of the probate court of Kane county was called and testified that although he had made a careful and exhaustive examination of the records and files in his court, and particularly of the places in which wills were accustomed to be kept, he was unable to find there any last will and testament of Richard Terry. This, at least, was sufficient to make a *prima facie* case of the loss of the will.

It is next contended that the contents of the will of Richard Terry were not proven with that degree of certainty required in cases where wills have been lost or destroyed. No copy had ever been made of the will, and it was necessary to rely upon the memory of those who had read it and knew its contents. Patterson and McNett testified that they remembered clearly the substance of the will, and while they did not pretend to give the exact language in which it was couched, they agreed that the testator had devised all of his property to his wife during the period of her natural life and had devised the remainder to his two grandchildren, the appellees. Terry had talked repeatedly with Dr. Patterson concerning the making of his will, and Patterson had attempted to draft the same for him before McNett was employed. While it is true that twenty-two years had elapsed between the time of the execution of the will and its admission to probate, this will was a very simple one in its provisions, and there is nothing improbable in the fact, as testified to by both of these witnesses, that they were able to recollect with certainty the substance of the will. It was not necessary that they be able to testify to its exact language, and the testimony of these witnesses was sufficient to establish the contents of the will. In the will case the burden was upon appellees, as proponents, to prove that the instrument in question was

the last will and testament of Richard Terry. By two witnesses it was proven that the will was executed and properly attested; that the testator at the time was of sound mind and memory; that the contents of the will were as established by the probate court, and, by one witness, that the will was still in existence for at least three weeks after the death of Richard Terry. This testimony stands uncontradicted.

It is urged that the court erred in admitting in evidence the order of the probate court admitting the will to probate, and a number of the decisions of this court are cited to the effect that this is not competent evidence and its admission in a doubtful case is error. These are all cases in which the cause was submitted to a jury and a different situation was presented than here. Where the issues are tried by the court without the intervention of a jury, the decree will not be reversed if there is sufficient competent evidence in the record upon which to sustain it.

It is finally urged that on account of the *laches* of appellees they are now estopped to claim the ownership of the land now in the possession of appellant, Maggie A. Cassem, or remuneration for that sold by Randall Cassem in his lifetime to Pike, the basis for this claim being, that during all the years succeeding the death of their grandfather, in 1888, down until after the death of their grandmother, in 1908, appellees have stood by and without objection witnessed the purchase of this property by Randall Cassem and his possession of the same and the placing thereon of valuable improvements by him. By the will of Richard Terry, his wife, Ann Eliza Terry, was given a life estate in these premises and was entitled to the possession. The possession of real estate by the tenant for life is not adverse to the remainder-man but is in legal contemplation the possession of the remainder-man. The remainder-man has no right of action for the possession until the death of the life tenant, and the Statute of Limitations will not

begin to run until the right of action accrues. (*Mettler* v. *Miller,* 129 Ill. 630; *Weigel* v. *Green,* 218 id. 227; *Hollenbeck* v. *Smith,* 231 id. 484; *Schroeder* v. *Bozarth,* 224 id. 310.) If the life tenant conveys to a third party by warranty deed, with the intention of passing the absolute title, and the grantee supposes the fee is being conveyed, such grantee will, in fact, hold adversely to the world, but he cannot avail himself of the rights of adverse possession, as against the remainder-man, during the lifetime of the life tenant. Such possession becomes adverse to the remainder-man only upon the death of the life tenant; (*Mettler* v. *Miller, supra;*) and this is true even though the possession of such grantee be coupled with the payment of taxes and the making of improvements. (*Weigel* v. *Green, supra.*) During the lifetime of their grandmother the appellees had no right of action for the possession of these premises, and while they cannot now recover that portion of the premises sold to Pike, they can recover the fair cash market value of the same at the time of the death of Ann Eliza Terry from the estate of Randall Cassem, as he acquired the same with a full knowledge of the rights and interests of appellees. Appellees were under no obligation to assert any rights, as against Randall Cassem or his devisee, during the lifetime of their grandmother, or to advise Randall Cassem of their claim to the remainder in the premises under the last will and testament of their grandfather. Randall Cassem already had knowledge of that fact and of all the circumstances surrounding the making of the will and the fact of its existence after Richard Terry's death. Under these circumstances appellees had the right, as against Randall Cassem and his representatives, to institute proceedings to recover possession of the property at any time after the death of Ann Eliza Terry and before the running of the Statute of Limitations.

The decree of the circuit court in each of the consolidated cases is affirmed.            *Decrees affirmed.*