[L. A. No. 9249. Department One.—March 9, 1928.]

MARTHA PORTER THOMPSON et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Andrew J. Copp, Jr., for Appellants.

Frank Karr,* C. W. Cornell and R. E. Wedekind for Respondents.

PRESTON, J.—This is an appeal by plaintiffs from a judgment of nonsuit entered after both sides had concluded the introduction of their evidence. The single issue presented is the plea of the statute of limitations, subdivision 2 of section 338 of the Code of Civil Procedure.

Respondents' statement of the facts and of the question involved is accurate and as follows:

"September 22, 1917—Eloise Wright Porter was granted a life estate in the property in question, with the reversion in plaintiffs' predecessors.

"November 4, 1919—Eloise Wright Porter deeded parcel 1 to the defendant. This deed made no mention of any life estate.

"November 7, 1919—Eloise Wright Porter deeded parcel 2 to the defendant. This deed made no mention of any life estate.

"January, February, and March, 1920—The defendant constructed and put into operation a railroad line over parcels 1 and 2, and has continuously operated said line, carrying freight and passengers thereover, as part of its system, in interstate and intrastate commerce, since said date.

"August 1, 1922—Eloise Wright Porter died.

"August 14, 1924—The plaintiffs began this action.

"The plaintiffs are reversioners and the owners of the fee simple title to parcels 1 and 2, the property here in litigation.

"The sole question in this case is whether the statute of limitations began to run against the reversioners at the date of the entry by the railroad or at the date of the death of the life tenant."

Appellants state their position in these words: "Plaintiffs' right to the possession of parcels 1 and 2 matured only upon the termination of Eloise Wright Porter's life estate and with it ripened into maturity their cause of action against the railroad company for continuing to use and occupy parcels 1 and 2 beyond the period limited by their grant."

Respondents counter with this statement of their position: "But appellants' action here did not depend on the right to possession. Therein is the distinction. Appellants had no right to possession after the railroad was constructed. The only action they ever had was for damages." Again respondents assert: "True, the life tenant had given her assent to the use contemplated, but in going in under that assent the railroad necessarily trespassed on the rights of the reversioners and necessarily injured at that time their inheritance. . . . It took the life estate rightfully under the deeds from the life tenant, but it occupied the fee without right. It appropriated the inheritance at that time, and permanently ousted the reversioners from their possibility of a reversion. . . . The railway got only the life estate by the deeds from the life tenant, but it took the inheritance of these reversioners outright."

We think appellants are clearly right and that respondents overcapitalize the rule of public policy operating to shield the railway from an action in ejectment and continue it in possession of the property of another. Appellants' claims are founded upon the right of possession and they are denied that specific relief and relegated to compensation in damages only by reason of the public convenience, but this is far from giving respondents the right to antedate the falling in of the life estate with the claim of trespass or waste. This case is ruled by such cases as *Pryor* v. *Winter*, 147 Cal. 554, 559 [109 Am. St. Rep. 162, 82 Pac. 202, 204], where it is said: "It would be strange, indeed, if during the life of the particular tenant a remainderman could be compelled to lose his estate on account of another's possession which he would be utterly helpless to interrupt."

And *Akley* v. *Bassett*, 189 Cal. 625, 643 [209 Pac. 576, 583], where it is said: "It is true that the possession of respondent's father, the tenant for life, was not adverse to her as remainderman. Such life tenant could not, by his dealings with the life estate, make his, or his grantee's possession, adverse to respondent, so as to start the statute of limitations against her during the life estate (*Pryor* v. *Winter*, 147 Cal. 554, 559 [109 Am. St. Rep. 162, 82 Pac. 202]; *McMurtry* v. *Fairley*, 194 Mo. 502, 510 [91 S. W. 902]); but, after such life estate terminated, the possession, unless in some way qualified, did become adverse and the

statute of limitations began to run at that time (*Mann* v. *Mann*, 141 Cal. 326, 330 [74 Pac. 995])."

Also the recent case of *Newport* v. *Hatton*, 195 Cal. 132, 144 [231 Pac. 987, 991], where it is said: "Mrs. Newport, as life tenant, could not, by her dealings with the life estate, make her own or a grantee's possession adverse to that of the remaindermen so as to start the statute of limitations against them during the life estate."

Unlimited authority may also be found in other states supporting these views. In the case of *Bartlow* v. *Chicago etc. Co.*, 243 Ill. 332 [90 N. E. 721], a condemnation proceeding and payment to the holder of the life estate in the land involved, vested in the railway company a right of way as against the holder of the life estate and the company thereby acquired right to possession of a right of way during her life. Appellant railway company, in suit for partition of the land, relied upon statutes of limitation of twenty and seven years. The court held that until death of the holder of the life estate, appellees had no right to possession of the premises, and could not maintain an action therefor; that the statute of limitations, therefore, did not run against them.

This question is discussed at length in the case of *Webster* v. *Pittsburgh etc. Co.*, 78 Ohio St. 87 [15 L. R. A. (N. S.) 1154, 84 N. E. 592]. The court held that action not to be barred by the statute of limitations of twenty-one years as said statute did not begin to run until death of the life tenant and further held that ejectment proceedings were proper.

Holding that the plaintiff and his representatives could institute proceedings to recover possession of the property involved at any time after the death of the life tenant and before the running of the statute of limitations, the court in the case of *Cassem* v. *Prindle*, 258 Ill. 11 [101 N. E. 241], said: "The remainderman has no right of action for the possession until the death of the life tenant, and the statute of limitations will not begin to run until the right of action accrues."

To the same effect, see *Westcott* v. *Meeker*, 144 Iowa, 311 [29 L. R. A. (N. S.) 947, 122 N. W. 964]; also *Bohrer* v. *Davis*, 94 Neb. 367 [Ann. Cas. 1915A, 992, L. R. A. 1918D, 430, 143 N. W. 209], where is is said: "The universal rule of

law is that the statute of limitations does not begin to run against a right of action until that right exists. The party who has the right of action has the full period of the statute in which to enforce it. The remainderman has no right of possession until the particular estate is terminated. He has no right of action which depends upon the right of possession until he is entitled to the possession.''

In the case of *Hauser* v. *Murray*, 256 Mo. 58, 85 [165 S. W. 376, 384], it is said: ''The plea of the statute of limitations is interposed as a defense . . . we are of the opinion that the general rule is applicable, and that neither she (holding as a life tenant) nor any grantee of the estate could claim adversely to the remaindermen, and that the statute of limitations did not begin to run against them until her death.''

See, to the same effect, *Rogers* v. *Ogburn*, 116 Ark. 233 [172 S. W. 867]; *Ratterman* v. *Apperson*, 141 Ky. 821 [133 S. W. 1005]; *Rich* v. *Victoria etc. Min. Co.*, 147 Fed. 380 [77 C. C. A. 558].

We see no force in the statement found as *dictum* in the case of *Gordon* v. *Cadwalader*, 172 Cal. 254 [156 Pac. 471]. While the unauthorized or forcible entry of a railway company might possibly be trespass upon the remainder interest as well as upon the life tenancy, yet where the entry is by consent of the life tenant, no presumption can arise that the railway company intends to despoil the estate of the remainderman. To so hold in this case would be to impute bad faith to respondents and knowledge thereof to appellants. This observation also disposes of the cases holding that entry of a railway company with its tracks constitutes a permanent taking of the lands so occupied. This cannot apply to an independent estate to be subsequently enjoyed where the entry is by consent of the life tenant, whose authority being limited, limits the railway company to the estate which the life tenant could convey.

Neither is there any applicability here of section 826 of the Civil Code to the effect that a remainderman, notwithstanding the intervening estate, may maintain an action for injury to the inheritance. There is no conclusive presumption that if the tracks are removed or abandoned on the falling in of the life estate, an injury has resulted to

the inheritance. Besides, the asserting of this right of action is permissive only and not compulsory.

Appellants' right of action arose on the death of the life tenant and the suit was instituted within the time allowed by statute reckoned from this event.

The judgment is reversed.

Curtis, J., and Seawell, J., concurred.