### McCLINTOCK et al. v. FONTAINE et al.

(Circuit Court, N. D. West Virginia. September 27, 1902.)

1. TENANTS IN COMMON—ADVANCEMENT OF TAXES—CONTRIBUTION.
    One who, as trustee, owning an undivided half of certain land, pays taxes on the whole, is entitled, as a tenant in common, to contribution from the other owners, and therefore to a lien on the land for the amount advanced.

2. VENDOR—DEFENSE OF TITLE—CONTRIBUTION FROM VENDEE.
    The owner of land, who conveyed, with covenants for quiet enjoyment and of warranty, an undivided portion thereof, having defended a suit involving all the land, without any notice from the grantee requiring him to so defend, was entitled to contribution for expenses incurred thereby.

3. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.
    In a suit for partition a cross-bill was filed by one of the co-owners, asserting a lien for taxes paid and advanced on the land, and seeking contribution. It appeared that plaintiffs were entitled to contribution from the complainants in the cross-bill for expenses incurred in defending a suit involving the whole land. *Held*, that the two claims could be adjusted in the partition suit, and it was not necessary for plaintiffs to file a bill for contribution, or bring an action at law.

Exceptions to Master's Report.

Vinson & Thompson, for plaintiffs.
Henry M. Russell, for defendants.

JACKSON, District Judge. On the 19th day of September, 1893, Alexander McClintock and John McClintock, partners doing business as Alexander McClintock & Son, who are citizens and residents of the state of Kentucky, filed their bill of complaint against W. B. Fontaine and C. B. Fontaine, partners doing business as W. B. Fontaine & Bro., who are citizens and residents of the state of West Virginia, and P. B. Dobbins, trustee, and others, who are citizens and residents of the state of West Virginia, and the Bowman Lumber Company, a corporation created and existing under the laws of the state of Pennsylvania, and doing business in the state of West Virginia. The plaintiffs in the bill allege that they are the owners of one undivided one-half interest in and to a tract of land lying and being in Logan and Boone counties, W. Va., containing 30,018 acres, and that the other half of the same tract of land is owned by P. B. Dobbins, trustee. One of the objects of this suit is to have the land partitioned and divided between the plaintiffs in this case and the trustee, Dobbins. Various other reliefs are prayed for in the bill, which are unnecessary to refer to at this time. On the 14th day of January, 1902, Howard Hazlett, who is one of the trustees of the property involved in this suit, appointed in the place of P. B. Dobbins, deceased, filed his petition setting up the fact that he is one of the trustees of one-half of the real property mentioned and described in the cross-bill, claiming a lien for $2,800.72 for taxes paid and advanced by him to the state of West Virginia. Upon this petition another order of reference was made to A. G. Patton, who was directed to ascertain the liens upon the real property mentioned and described in the cross-bill filed in this case, with their respective amounts and priorities, and also to consider and determine the claims made in the cross-bill of liens for taxes, and whether or not there are any offsets against the liens for taxes, and, further, to report the situation and condition of the said real property, with respect to making a partition of the same amongst its respective owners, and whether or not it is to the interest of the owners to have the same sold and the proceeds divided, or whether the property should be divided in kind. In pursuance to this order the master made and filed his report on the 21st day of October, 1901. To that report exceptions are taken by C. L. Talbott and John McClintock. This case is now heard upon those exceptions.

The first and second exceptions to the master's report, stating that the master erred in finding that Hazlett, the trustee, has a lien against the said land for taxes paid thereon (especially for the last payment of taxes, as shown in his report), and that the master erred in finding that Hazlett, the trustee, is entitled to cost, and sale of the said land to be made for the payment of the said taxes, are overruled, for the reason that the trustee was acting as the agent of the joint co-owners of the land with the plaintiffs in this action; and the payment of the taxes by him, as one of the owners of the land, gave him a lien against the owners of the other half, and, by reason of the fact that he had

119 F.—29

advanced the money to the state of West Virginia, gave him a right of action for contribution against the plaintiffs in this action, who owed their proportion of the taxes. Hazlett, as a tenant in common, was protecting the land in the interest of all the owners of the property; and, if he has paid the entire taxes on the property, he is entitled to contribution from the other owners for the amount that he advanced for them, to relieve the property of the lien of the state of West Virginia for its taxes. Hazlett is therefore entitled to a lien upon the property for the amount that he advanced.

As to the third and fourth exceptions to the master's report, it would seem to be but equitable and just that Hazlett, the trustee, who represented the owners of one-half of the interest of the land in controversy in the King suit, should contribute to the defense of that suit. But it is equally true that, if McClintock had not defended the suit and prevailed in it, their title to the land might have been lost. It was not McClintock's duty to defend the suit, as to the part he conveyed to Dobbins, unless Hazlett, acting for himself and those he represented, gave notice to him of the fact of the existence of the suit, and required him to defend it. It was clearly the duty of Hazlett and those whom he represented to defend their title, and a failure to do so would not entitle them to an action against McClintock upon his warranty, unless it was clearly established that their title would not avail against the title of King, and not then until after their eviction. It is well settled that an eviction is necessary to a breach of the covenants for quiet enjoyment and of warranty. If Hazlett knew of the suit of King against their land, and failed and neglected to defend it, it was his duty, being in possession of the land under a deed from McClintock, to protect it. Rawle, Cov. § 131. In this case it appears that McClintock expended a large amount of money in defending the suit against King, which was for the benefit of his co-tenants as well as himself. This being so, it would seem that Hazlett and those whom he represented should share in the burdens of the defense. "A tenant in common, claiming an equality of benefit, must submit to an equality of burden." Wilton v. Tazwell, 86 Ill. 29; Freem. Co-Ten. §§ 174, 175. But it is claimed that, to secure a contribution from his cotenants, McClintock should file his bill, or bring an action in assumpsit, to assert his claim. Ordinarily this would be so. But can it be said that where a court is dealing, as in this case, with the equities between the parties, McClintock should be turned over to his bill seeking contribution, or to his action at law, to recover the amount which he claims is due him for defending the suit? Hazlett, in his petition, seeks to charge the land with a large amount for taxes that he has advanced. The plaintiff McClintock claims that he ought to be reimbursed, as a set-off to the taxes, for the expenses that he incurred, to the extent that his co-tenants would be liable in defending their interest to the land in controversy. It would seem, under the circumstances of this case, the court, having before it the claim of Hazlett for the amount of money that he advanced in the discharge of the taxes against the land, that McClintock should have the right to have his claim adjusted and settled in this proceeding, in order to avoid a multiplicity of suits.

For the reasons assigned, the court is of the opinion that the third and fourth exceptions to the master's report should be sustained, and referred back to the master, to ascertain the amount that McClintock paid in defense of the title to the 30,018 acres of land, and also to ascertain what is a just and proper charge against that portion of the land that Hazlett and those whom he represented claim.