EBEL v. HULCE.

BOUNDARIES—FENCES—LOCATION BY PARTIES.

Where a fence has been claimed by defendant and his grant-
ors to mark the true boundary between his land and plaintiff's
for nearly 50 years, and nothing is claimed to have taken
place impeaching defendant's adversary holding until long
after he had occupied the land for 20 years, his subsequent
willingness to have a contemplated new fence built upon a
straight line, his joining with his neighbors in paying for a
survey of the section, and later with plaintiff in employing
the same surveyor to designate where the true line as estab-
lished by the previous survey would fall, and his statement
that he never claimed more land than his deed called for, do
not impeach his title to the land enclosed by the fence, where
he never admitted the correctness of the new boundary, and
always claimed that what his deed called for was laid out
upon the ground, and its boundary marked by the fence.

Error to Eaton; Smith, J. Submitted June 3, 1908.
(Docket No. 14.)   Decided September 15, 1908.

Ejectment by John Ebel against Benjamin Hulce.
There was judgment for plaintiff, and defendant brings
error.   Reversed.

*Horace S. Maynard*, for appellant.

*Elmer N. Peters*, for appellee.

OSTRANDER, J. The owner of a quarter section of
land sold the east one-half of the east one-half thereof in
1856 to defendant's grantor.   In 1857 said grantor and
grantee built a line fence which has ever since been main-
tained; defendant and the original grantor and his suc-
cessive grantees occupying to the fence and joining in its
maintenance.   Plaintiff bought the land to the west of
the above-given description in 1883, and was told by de-

fendant that the fence was on the line. Thereafter he and defendant maintained the fence. This suit was begun in 1907 to recover a narrow piece of land lying east of the line of the old fence. The trial court, over the contention of defendant that a verdict should be directed in his favor, submitted to the jury two questions of fact; the first involving the integrity of a survey made 16 or 17 years before this case was tried, and of a line run in accordance with that survey some 2 or 3 years before the case was tried; the second, the intention and understanding of the owners in laying the old fence and in occupying the land on either side thereof. That the proprietors had, in fact, exclusively, continuously, peaceably for nearly 50 years occupied the land on either side of the fence, and joined in maintaining it, is not disputed. The original owner of the quarter section of land is dead. His widow, who succeeded to the title to land west of the fence, is dead. Their son, who lived on the land for more than 28 years and until it was sold to the plaintiff, testified that he supposed the fence was on the line. He never heard the matter mentioned until he was old enough to and did manage the farm for his mother, when defendant told him how he and the father of the witness had divided the fence for purposes of its maintenance. Witness thereafter maintained the portions so designated by defendant. Defendant testified, without objection, that the fence was originally built upon a line designated by a surveyor, agreed to by the original owner and himself as the dividing line. He was cross-examined upon the subject. On his cross-examination the following occurred:

"*Q.* When you built the first 40 rods, you did not build a straight true line fence. What I mean is, it was not a wire fence like your present wire fence. I do not mean by that just the crooks in the worm fence.

"*A.* We had a worm—it was a five feet worm. I don't think there were crooks and bows in that rail fence. We [defendant and his grantor] calculated that was a true line.

"*Q.* You calculated it was a true line between your

properties. I concede that. That is not what I am driving at; but what I mean wasn't that fence somewhat crooked after you got it done, wasn't that fence bowing some and somewhat crooked?

"*A.* Not but very little, if any."

Later a motion was made for plaintiff to strike out testimony relating to matters equally within the knowledge of the deceased grantors. The court refused to strike it out. With this undisputed testimony and the concession of counsel in the record, it was clearly error for the court to submit to the jury, as he did, the question whether the original fence was provisional, built for convenience, and with an understanding that, when the true line was found, it should be resorted to. But defendant was in any event entitled to have a verdict in his favor directed by the court. His claim that the old fence marked the boundary is repeated and insistent. Nothing is claimed to have taken place impeaching his adversary holding until long after he had occupied the land for 20 years. Nothing has since transpired to divest him of the title thus acquired. There is testimony tending to prove that the old fence was not straight, and that defendant desired to have the contemplated new post and wire fence built on a straight line. He joined with his neighbors in 1890 or 1891 in paying for the services of a surveyor to survey the section. There is testimony tending to prove that plaintiff and defendant and the same surveyor, two or three years before this case was tried and when a new fence had become a necessity, found out where it was claimed the true line as established by that survey would fall. But it is not claimed that defendant did otherwise than deny the correctness of the line and refuse to agree to the new boundary. Plaintiff relies upon the statement of defendant, given at the trial, that he never claimed more land than his deed called for. But he did claim that what his deed called for was laid out upon the ground and its west line marked by the old line fence. There is no testimony tending to prove a new boundary by agreement. Neither

the joining in the movement for a new survey nor the desire to have a straight fence operated to divest him of his title.

The judgment is reversed, and a new trial granted.

GRANT, C. J., and BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.